IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02408-MSK-MJW

CHERIE MCCRACKEN-PHILLIPS,

       Plaintiff,

v.

JOHN PHILLIPS, and
FRANCIS MCLEAN PHILLIPS,

       Defendants.

_____

**OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
RECOMMENDATION, AND DISMISSING ACTION**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's *pro se* Objections

**(#7)** to the January 27, 2009 Recommendation **(# 6)** of United States Magistrate Judge Michael

J. Watanabe that the Complaint be dismissed for failure to comply with Fed. R. Civ. P. 8.

The Plaintiff commenced this action *pro se* (although not *in forma pauperis*) on

November 15, 2008. The Court notes that her 6-page Complaint **(# 1)** is not on the Court's

approved form for *pro se* pleadings, and lacks a caption that clearly designates the defendants

she intends to sue. The narrative in the Complaint is disjointed and rambling. The first several

sentences appear to indicate that the matter concerns some domestic relations dispute:

> I am petitioning the court for a new agreement with John D.
> Phillips, my ex-husband. I have quite a loss & seek and am
> seeking injunctive relief. The other agreement was [mail stolen?] I
> am asking for injunctive relief and an order against harassment,
> elder abuse, and pay from he or his third wife? Francis Phillips for
> the use of the residence . . .

1

However, the Complaint quickly becomes more disjointed:

> I've had the following losses: (1) Harassment/Elder Abuse by
> Sonya Pearson – interferences with education/public trust (life &
> death) what the college calls sexual harassment, $600,000 +
> injunctive relief; (2) loss of telephone in Laguna Hills, CA – theft
> by Exxon Driver - 2002/2003; (3) theft of food, toothbrush,
> toothpaste & soap by Lorrain Taylor/Exxon [Marde?] King $
> 200,000 in stolen property purchased from Walmart as
> Brian/Houston/Robinson/Ruberston was formerly employed by
> Walmart. . .

The Plaintiff appears to understand that the nature of this dispute is one that properly belongs in state court, as the Complaint states "I suspect a judge will probably direct this petition back to the state court but I ask for permission that it stay in the federal courts to allow for payment or taking possession of property for injunctive relief by Cherie McCracken Living Trust."

On December 24, 2008, Magistrate Judge Watanabe issued an Order To Amend the Complaint (**# 4**), finding that the Complaint did not comply with the requirement of D.C. Colo. L. Civ. R. 8.1(A) that *pro se* pleadings be filed on the Court's form, and that the Complaint violated Fed. R. Civ. P. 8 by failing to supply a concise and coherent statement of the parties and claims. The Magistrate Judge directed that the Plaintiff repair those defects by filing a proper Amended Complaint within 30 days. The Magistrate Judge's Order advised the Plaintiff that failure to comply would result in a recommendation that the case be dismissed.

On January 23, 2009, the Plaintiff filed a 20-page packet of documents (**# 5**), including a Civil Cover Sheet noting that the case was in the nature of foreclosure (and indicating, among other things, that "the State of Az., the State of Co & California not in compliance with alien

2

laws for 5 years/mail was stolen"); a unsigned Summons,[1] annotated by the Plaintiff with various notations, including the statement that "This Summons violates the Court rule in the most expedient manner/most expensive manner.  The County Recorder is playing a lot of games with websites.  It ought to be made available to me & is not Mr. Phillips contact with his bank may not be used to collect on me as he has in the past"; a Return of Service completed by the Plaintiff that states that service "has been mailed twice" to the Defendants in November 2008, and further mentions that the Plaintiff "has already spent $ 10,000.00 in fees due & [illegible] my court documents [(-ed state)?] City gang that stolen legal mail – where is U.S. Attorney to protect me?"; a copy of an Express Mail receipt showing a mailing from the Plaintiff to Defendant John Phillips[2]; a form document entitled "Information for Temporary Restraining Order," in which the Plaintiff appears to recite complains that "Mr. Phillips' employment contact/gang took my car, my personal property -clothing - Az. silver/computer/telephone - Ca. - with no judgment - not court no targeting to kill me . . ." and responds to the question "Reason why immediate action is required" with the statement "So I am not killed or harmed in any way when I am in Colorado as Mr. Phillip's contacts have hurt my family"; and a Writ of Garnishment form in which the Plaintiff purports to have a judgment in the amount of $ 96,000 against the Defendants.[3]

---

[1]The Summons is the first document in this case to bear a caption that identifies the Defendants.  This Court has used the caption given by the Plaintiff in this document for the caption listed in this Order

[2]This document appears to indicate that the Plaintiff is a resident of Arizona and Defendant John Phillips is a resident of Colorado.

[3]No identifying information about any such judgment, nor a copy thereof, is included in this document, leading the Court to believe that the referenced judgment is one the Plaintiff seeks to obtain, not one she purports to already possess.

The remainder of this document is a series of handwritten pages, the first few of which would seem to be a response to the Magistrate Judge's Order and some degree of elaboration about the nature of the Plaintiff's claim.[4]  She indicates that "Defendant is: John Phillips"; notes that he has not responded within 30 days to the notice she gave him that a suit had been commenced; and states that "I trespass John Phillips & Frances McLean Phillips from house in Genessee Village, Golden, Co. property as of Nov. 5, 2008.  I ask for an order from Judge Krieger that I may go & live at the home without my husband being there and this Frances McLean Phillips has paid me no rent.  I may also homestead this property," among other things.

On January 27, 2009, the Magistrate Judge issued the instant Recommendation (# 6). The Magistrate Judge recited the procedural history of the case and the circumstances leading to the issuance of the December 24, 2008 Order; found that the "hodgepodge of materials" filed by the Plaintiff on January 23, 2009 "clearly do not comply" with Rule 8; noted that the Plaintiff had not complied with that portion of the Order that required the filing of an Amended Complaint on the Court's form; and concluded that "[d]espite being given an adequate opportunity to file an Amended Complaint that complies with Rule 8, plaintiff has failed to do

---

[4]The remaining pages comprise: (i) a proposed "Emergency Order" for the Court to sign, declaring that the Plaintiff "has trespassed" (apparently meaning "evicted") the Defendants fro0m a residence in Colorado, that the Plaintiff is not subject to any costs, that the Court enjoins others from harassing her, and that she shall be provided "safe transport to arrive in Colorado"; (ii) a letter to the Governor of Colorado requesting that the Plaintiff be appointed to fill what was then a vacant U.S. Senate seat; (iii) a letter stating that "fees are due immediately from Pres. Clinton's Library Fund, Pres. Bush's Library Fund, and Pres. Barrack Obama's Fund for this Post Office that sits on the Cherie McCracken Living Trust property"; and (iv) two similar letters in which the Plaintiff requests that the U.S. Attorney obtain a "mental health petition to petition Rosa Casa - OC - Employee of the State of California [because] it is her gang that drives around and hits people upon which she writes up defamation, slander, and libel against people . . . ."

so." Accordingly, the Magistrate Judge recommended that the action be dismissed without prejudice for failure to comply with Rule 8.

The Plaintiff filed timely Objections (# 7) to the Recommendation. As with her other filings, the Objections are disjointed, rambling, and occasionally incoherent. The first paragraph recites the Plaintiff's position that "my CPA license is correct and current" and that the states of Colorado, Arizona, and California are in violation with a "federal identification law"[5]; the next paragraph alleges that the Plaintiff is "due compensation from the Adolph Coors Foundation Trustees" who "locked me out of over 20 homes" and "used a "FNMA banking relationship to break into my apartment"; she objects to Judge Watanabe "being the U.S. Magistrate Judge in this case" and requests that he "cite his conflicts of interest that he has as a judge and how long he has been a United States citizen," and posits that any personal banking done by the judges of this Court with unspecified banks may create a conflict of interest; she "objects to payment of

---

[5]The Plaintiff's citation to this law makes reference to "H.B. 63-1008." The Court assumes "H.B" to refer to a House of Representatives bill number, but the "63-1008" designation is not a standard numbering convention. House bills are given a single, non-hyphenated number representing the sequence in which they were introduced (e.g. House bill 1 is the first bill introduced in a particular session, House bill 100 is the 100th bill in that session, etc.). Because those numbers are duplicated each session of Congress, it is necessary to identify the Congress or date of a particular bill. The Court is unable to ascertain what bill the Plaintiff is referring to, but notes that the House bill numbered 1008 in the current (111th) session of Congress (a bill governing the auditing of the intelligence community) was not introduced until February 11, 2009, after the Plaintiff's Objections were filed, and thus, the Plaintiff cannot be referring to this bill. House bill 1008 in the previous (110th) Congress, introduced in February 2007, sought to "promote safe use of the internet" by creating and "Office of Internet Safety and Public Awareness." House bill 1008 in the 109th Congress was introduced on March 1, 2005, and concerned authorizing the Department of the Interior to participate in the construction of a water project in Riverside, California. The Court has reviewed several other House bill 1008s from prior sessions of Congress dating back to the mid-1990s, and finds none that would relate to the Plaintiff's stated concerns. Moreover, the Court notes that, in the past 15 years, none of the House bills designated as number 1008 ever proceeded beyond their first reference to committee. Thus, the Court cannot ascertain any clear allegation of an actual federal statute being violated.

and by Wells Fargo to an entity called NAMI through contributions made by [CPG Think?]; that "Chase Bank must be trespassed from Washington Mutual properties in California" and that "Omaha Mutual tried to kill me by trespassing me and not giving me my money within 5 days"; speculates that "Judge Watanabe is from a country that other persons allowed to be here have tried to kill me & my family" and states that specific individuals have killed other people; states that this case is "a simple matter of a foreclosure, trespass of John Phillips, Francis McLean Phillips, and Kimberly Nettles Phillips"; and raises numerous other contentions that need not be elaborated upon.  At least one passage in the Plaintiff's Objections is lucid and on-point: she states that court-approved forms "are not on the [Court's] website."   The following day, the Plaintiff filed an additional document (**# 8**), consisting of receipts for photocopying services from Staples, along with a handwritten notation reciting that while making the copies, the Plaintiff observed "a silver car . . . was going down the street – 2 men in blue coats at 50 miles per hour.  I would have call PD, but Wells Fargo encourages drunk drivers from ASU. . .," etc., and encloses a second set of Objections that appear to be identical to those filed at Docket # 7.

Because the Magistrate Judge's recommendation is dispositive of this action, the Court reviews *de novo* those portions to which the Plaintiff has filed Objections. Fed. R. Civ. P. 72(b). The Court is mindful of the Plaintiff's *pro se* status, and affords her pleadings the liberal construction that is required of all *pro se* pleadings. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).  However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  *Pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the

requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

The Magistrate Judge correctly noted that Fed. R. Civ. P. 8(a) requires a plaintiff's Complaint to contain a "short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief"; and "a demand for the relief sought." To comply with this rule, the Complaint "must explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Rule 8 is intended to serve as a "ceiling," not a "floor" – that is, the Complaint must be the requisite "short and plain statement" and nothing more. *Toevs v. Reid*, 267 Fed.Appx. 817, 818-19 (10th Cir. 2008) (unpublished) (citing cases). However, recognizing that brevity in stating claims is not always possible for *pro se* litigants, the Court does provide them some additional leeway in overlooking some degree of prolixity. *Id.* at 819.

Fed. R. Civ. P. 8 is not self-enforcing, such that a Complaint can be simply dismissed for failure to comply with its terms. Rather, a party's failure to comply with any of the Federal Rules of Civil Procedure – including Rule 8 – can support a dismissal under Fed. R. Civ. P. 41(b). *Nasious*, 492 F.3d at 1161; *Toevs*, 267 Fed.Appx. at 818 n. 2. Where, as here, the recommended dismissal is without prejudice, the Court is not required to adhere to any particular procedure before entering the dismissal. *Nasious*, 492 F.3d at 1162. Nevertheless, this Court

finds that adherence to the more rigorous process required by *Nasious* where a dismissal with prejudice is contemplated is helpful to ensure that orders of dismissal are not entered hastily. Where the Court contemplates such a dismissal, it must specifically consider: (i) the degree of prejudice to the defendant from the violation; (ii) the degree of interference with the legal process posed by the violation; (iii) the culpability of the litigant; (iv) whether the Court previously advised the litigant that dismissal was a possible sanction; and (v) the efficacy of a sanction short of dismissal. *Id.*

This Court agrees with the Magistrate Judge that the Plaintiff's Complaint runs afoul of Rule 8, and that the supplemental material filed by the Plaintiff on January 23, 2009 failed to cure this deficiency. Even now, it remains somewhat unclear to the Court precisely what claim or claims the Plaintiff intends to assert, and against whom she intends to assert them. It is fairly clear that the Plaintiff seeks to evict her ex-husband and his wife from a residence in Colorado, but it is not clear on what grounds the Plaintiff asserts a superior possessory interest in the property; indeed, the first line of the initial Complaint appears to suggest that the Plaintiff's rights to the property (if any) are subordinate to her ex-husband's, as she wants a "new agreement" that may relate to that issue.[6] Even if this were the only material in the Plaintiff's Complaint, the Court would be reluctant to allow the case to proceed as the Plaintiff's allegations do not clearly advise the Defendants or the Court of the legal basis upon which the Plaintiff

---

[6]The Court assumes, without necessarily finding, that there might be federal subject matter jurisdiction to hear any such action, as the Plaintiff is apparently a citizen of Arizona and the Defendants are apparently citizens of Colorado, and the amount in controversy may exceed $75,000. 28 U.S.C. § 1332. The Court further assumes, without necessarily finding, that diversity jurisdiction would allow it to hear an eviction action involving non-federal property and non-federal claimants.

believes she is entitled to occupy the Colorado property.  *Nasious*,  492 F.3d at 1163 (Complaint

must, at a minimum, allege "what specific legal right the plaintiff believes the defendant

violated").  But the Court is more troubled by the wealth of extraneous information in the

Complaint and supporting documents.  The Plaintiff's numerous, rambling tangents reciting

grievances against banks, individuals in California, the Post Office, and others appear to have no

connection whatsoever to her claim against her ex-husband, although the lack of any linearity in

the Plaintiff's pleadings makes it difficult to make such an assertion with any confidence.  While

the Plaintiff's total page count – 26 – in both her original Complaint and supplemental

submission does not necessarily approach the 42 pages at found to be overly prolix in *Nasious*,

and only slightly exceeds the 23-page pleading found to be sufficiently concise in *Toevs*,[7] this

Court is mindful that the sufficiency of a pleading is judged by both its quantity <u>and</u> quality.   In

addition to a web of confusing, extraneous, occasionally delusional allegations against others –

allegations having no clear connection to one another – the Plaintiff's claims against the

Defendants themselves are unclear and disjointed.  In addition to requesting eviction of the

Defendants from the Colorado residence, the Plaintiff makes references to Defendant John

Phillips trying to kill her, taking her property, etc., and purports to have claims for monetary

relief against him beyond the equitable remedy of eviction.  Whatever those additional claims

may be, the Plaintiff has not recited them with the degree of specificity required by *Nasious*.

Accordingly, the Court adopts the Magistrate Judge's finding that the Plaintiff's pleadings,

---

[7]In actuality, the 23-page Complaint in *Toevs* was found to consist of 13 pages of substantive claims, and thus, only approximately 10 pages of the Complaint were needlessly irrelevant and prolix.  Here, nearly all of the Plaintiff's 26 pages address matters that appear to be irrelevant to her claim against the Defendants.

individually or in concert, even when construed liberally, fail to comply with Rule 8(a)'s requirements.

Having concluded that the Plaintiff has violated Rule 8, the Court turns to the factors in *Nasious* to determine the appropriate remedy.  As in *Nasious*, the Court finds that a plaintiff's lengthy, rambling, unclear pleadings inherently prejudice both the defendant who must attempt to respond to them and the Court that is required to measure and assess them.  492 F.3d at 1162-63.  With regard to the notice and culpability factors, *Nasious* explains that these two factors "depend[ ] in great measure on the usefulness of the notice [the plaintiff] has received from the court about what is (and is not) expected in an initial pleading." *Id.*  The court in *Nasious* recommended that "a district court might helpfully advise a pro se litigant that, to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated," and explains that "the more helpful the notice . . ., the greater the culpability a *pro se* litigant bears in noncompliance."  This Court notes that the Magistrate Judge's Order did not specifically recite *Nasious*' explanation of the Plaintiff's obligation; rather, the Magistrate Judge simply cited to *Nasious* and quoted the less-helpful text of Rule 8.  However, the Magistrate Judge also instructed the Plaintiff to obtain and use the Court's required form for *pro se* litigants.  The Court's form (which, contrary to the Plaintiff's contention, is available on the Court's website at: http://www.cod.uscourts.gov/Documents/Civil/CivAct/Filing_a_Civil_Suit_Package.pdf) would have helped guide the Plaintiff through identifying the Defendants, stating the jurisdictional basis for the claim, and setting forth the grounds upon which the claim is based.

10

Thus, while the Magistrate Judge's notice to the Plaintiff of her obligations under Rule 8 may not have been as clear and helpful as it could have been, her refusal to follow his instructions and obtain a form complaint do tip the notice/culpability factors somewhat against her.

Finally, the Court considers whether some sanction short of dismissal would be effective. It is clear that the Plaintiff is either unwilling or, more likely, unable to constrain her complaints in this case to matters in which John Phillips and Frances McLean Phillips have wronged her. Each and every filing in this case has asserted a litany of assertions against others for apparently unrelated conduct, to the point where these unrelated matters almost completely overshadow any apparent claims against Mr. and Mrs. Phillips. Simply put, the Court is not confident that the Plaintiff is able to constrain her focus such that it would be possible for her to replead and prosecute this action without repeatedly wandering off into a web of unrelated gripes. As a result, the Court can conceive of no lesser sanction that would be effective in focusing the Plaintiff's attention only on the claims against the Defendants. And while dismissal is a harsh remedy, the Court notes that the Magistrate Judge recommended that such dismissal be without prejudice, a result that forces the Plaintiff "back to the drawing board," but does not permanently deprive her of the opportunity to someday assert colorable claims. *Nasious*, 492 F.3d at 1163 (suggesting dismissal without prejudice as a less-drastic sanction than dismissal with prejudice).

Finally, the Court turns to an issue that was not expressly considered by the Magistrate Judge, but warrants brief comment. Unlike many *pro se* litigants, the Plaintiff here does not proceed *in forma pauperis*; rather, she paid the $ 350 filing fee. When a party proceeds *in forma pauperis* under 28 U.S.C. § 1915, the Court has the right – and indeed, the obligation – to *sua sponte* dismiss a complaint that is frivolous or otherwise improper. Several courts have held that

11

a party's payment of the filing fee prevents *sua sponte* dismissal of an action as frivolous.  *Butler v. Leen*, 4 F.3d 772, 773 (9th Cir. 1993) (citing cases).  However, these cases predate the 1995 revision of § 1915 by the Prisoner Litigation Reform Act.  Since 1995, 28 U.S.C. § 1915(e)(2) permits the Court, "notwithstanding any filing fee . .  that may have been paid," to dismiss an action as frivolous.  The language of this does not limit this review to prisoner actions or those in which a party proceeds *in forma pauperis*, and requires the Court to screen <u>every</u> action for frivolousness.  *See U.S. ex rel. Donaldson v. Conservation Resource*, 2006 WL 695674 (E.D. Mi. Mar. 14, 2006) (unpublished).  Thus, the Plaintiff's payment of a filing fee does not preclude the Court entering a *sua sponte* dismissal of her action prior to directing service.

In any event, this Court notes that the ground for the Magistrate Judge's recommendation – and this Court's adoption of it – is not that the Complaint is necessarily "frivolous," but that any arguable merit it may have is completely obscured by its lack of clarity and prolixity in violation of Rule 8.  *Sua sponte* dismissals on such grounds, particularly after leave to amend has been granted, is entirely appropriate.  *See e.g. Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995) (suggesting that prolix matter should be stricken, rather than the action dismissed, if the contours of a non-frivolous claim can otherwise be discerned; here, even the Amended Complaint fails to clearly allege a non-frivolous claim against the Defendants).

Accordingly, the Court **OVERRULES** the Plaintiff's Objections **(# 7, 8)** and **ADOPTS** the Recommendation **(# 6)** in its entirety.  The Complaint **(# 1)** is **DISMISSED** without prejudice pursuant to Fed. R. Civ. P. 41(b), on the grounds that it violates Fed. R. Civ. P. 8(a). The Clerk of the Court shall close this case.

Dated this 7th day of July, 2009

**BY THE COURT:**

Marcia S. Krieger
United States District Judge